IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AARON BLOCKER, | |
| Plaintiff, | Case No. 20-cv-01633 |
| v. | Judge Mary M. Rowland |
| U.S. EXPRESS ENTERPRISES, INC., a Nevada Corporation, together with its consolidated subsidiaries, | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Aaron Blocker sued Defendant U.S. Xpress Enterprises Inc. ("Xpress") for alleged violations of the Fair Credit Reporting Act (FCRA), 15 U.S.C. §1681 *et seq.*, Fair Labor Standards Act (FLSA), 29 U.S.C. §201 *et seq.*, and for fraudulent inducement. Xpress moved pursuant to Federal Rule of Civil Procedure 12(b)(3) to stay this action and compel arbitration, or, in the alternative, to dismiss Blocker's claims pursuant to Rule 12(b)(6). Dkt. 22. For the reasons stated herein, Defendant's motion is converted to a Rule 12(b)(3) motion for improper venue [22] and is granted because the claims are subject to arbitration in Tennessee.

**I.   Background**

On July 19, 2019, Blocker applied for a position with Xpress through an online application. Dkt. 1 (Compl.), ¶¶21-22.[1] As part of the employment application to

---

[1] The Court construes the facts in favor of Blocker and draws reasonable inferences in his favor but also may "examine facts outside the complaint" and decline to accept Blocker's allegations if contradicted by defendant's affidavit. *Bahoor v. Varonis Sys., Inc.*, 152 F. Supp. 3d 1091, 1094–95 (N.D. Ill. 2015) (citations omitted).

1

Xpress, on that same date, Blocker signed two documents addressing arbitration: the (1) "Xpress Resolution Program and Rules for Arbitration" (hereafter, "Resolution Program") and (2) the "Arbitration Program Agreement" (hereafter, "Arbitration Agreement"). Dkt. 22-1 (McGraw First Decl., Exh. 1).[2]

The Resolution Program states, in relevant part, that it:

> is designed to provide quick, fair, and inexpensive resolution of disputes among U.S. Xpress, Inc. and its applicants and employees. Except as otherwise stated herein, the Xpress Resolution Program creates the only process for resolving such disputes, and no such dispute can be pursued before a judge and jury in court.

The Resolution Program again reiterates in paragraph 5 that "[t]his Program is the exclusive method through which Legal Disputes may be resolved." The Arbitration Agreement states, in relevant part:

> I have applied to be considered for employment with [Xpress]. I understand that consideration of my application, as well as any offer of employment, by U.S. Xpress is contingent on my agreement to be bound by the terms and conditions of U.S. XPRESS's alternative dispute program known as Xpress Resolution Program and Rules for Arbitration (the "Program"). I acknowledge that US Xpress has provided me a copy of the Program and that I have reviewed it…I consent to, and agree to be bound by, the terms of the Program…I confirm my understanding and agreement that work disputes in which I am involved that fall within the Program's definition of "Legal Dispute" will be resolved exclusively through final and binding arbitration.

(McGraw First Decl., Exh. 1). Blocker electronically signed both agreements on July 19. (*Id.*)

On July 24, Blocker received an email from third-party vendor Asurint, notifying him that Asurint was providing Xpress with a report about Blocker that may contain

---

[2] All dates herein are in 2019 unless otherwise noted.

2

adverse information about him. Compl. ¶23; Dkt. 22, p. 2. On July 26, Xpress recruiter Kristina Christie emailed Blocker and requested additional information regarding certain felony convictions that had been revealed in the Asurint report. Compl. ¶24; Dkt. 22, p. 2. The same day Blocker responded to Christie, but Xpress maintains that Blocker provided only part of the requested information. Dkt. 22, p. 2. Christie then provided Blocker with a conditional employment offer. Compl., Exh. E. Her email emphasized that the offer was a "*conditional* offer of employment" and was "*conditional and dependent upon*, including other factors," completing a D.O.T. drug screen and physical, road test, a physical standard test, and successfully completing the company's orientation program. *Id.* (emphasis added). Christie's email also contained information about an orientation session for the following week. *Id.* Blocker says that on July 27 he resigned from his position with a different company. Compl. ¶ 26.

Blocker attended the Xpress orientation. Dkt. 22, p. 3. He claims that he satisfied the conditions of his conditional offer and signed an employment agreement on July 29. Compl. ¶ 28. After the second day of orientation, Blocker says that he was informed that he would be assigned a tractor the following day. *Id.* ¶ 29. On July 31, however, Blocker was notified that his prior felony disqualified him from employment with Xpress. *Id.* ¶ 30. That same day he received a pre-adverse action notice advising him of his rights under the FCRA. Dkt. 22, p. 3. On August 14, Blocker received a formal adverse action notice advising him that Xpress was not hiring him at least in part due to information in his background check. Compl. ¶ 33; Dkt. 22, p. 3.

Blocker filed this lawsuit on March 6, 2020. He alleges Xpress violated the FCRA by failing to provide him with a pre-adverse action notice within three business days of obtaining the consumer report, and violated the FLSA by not compensating him for attending the orientation. He also brings a state law claim of fraudulent inducement. In response to Xpress' current motion, Blocker argues that no arbitration agreement exists between him and Xpress. Dkt. 29, p. 2.[3]

## II.     Standard

Congress' principal purpose in enacting the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* (the "F.A.A."), was to ensure that private arbitration agreements are enforced according to their terms. *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University,* 109 S.Ct. 1248, 1255 (1989). Section 2 of the F.A.A. "requires federal courts to place arbitration agreements upon the same footing as other contracts." *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637, 1643, 207 L. Ed. 2d 1 (2020) (cleaned up). Further, "[w]here, as here, the parties have agreed to abide by state rules of arbitration, enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA." *Volt,* 109 S.Ct. at 1256.

Here, the Tennessee Uniform Arbitration Act (TUAA) applies because of the choice of law provision in paragraph 13, "Choice of Law and Venue" in the Resolution

---

[3] In response to Xpress's motion to compel arbitration and stay this case, Blocker filed a response brief which also requests summary judgment under Rule 56(a). As discussed below, Blocker's summary judgment motion is denied as moot.

4

Program agreement.[4] The TUAA was adopted "(1) to promote private settlement of disputes, and (2) to ensure the enforceability of private agreements to arbitrate." *Morgan Keegan & Co., Inc. v. Smythe,* 401 S.W.3d 595, 603 (Tenn. 2013) (cleaned up). Arbitration agreements are favored in Tennessee. *Benton v. Vanderbilt Univ.,* 137 S.W.3d 614, 617-18 (Tenn. 2004). In Tennessee, "[a]n agreement to arbitrate does not affect the rights and duties of the parties but simply shifts the forum of dispute settlement." *Green v. U.S. Xpress Enterprises, Inc.*, 434 F. Supp. 3d 633, 638-39 (E.D. Tenn. 2020) (cleaned up). Further, the TUAA states that a written agreement to arbitrate is "valid, enforceable and irrevocable" and the Act does not contain an exemption for transportation workers. *See id.*; T.C.A. § 29-5-302.

In addressing the pending motion, the Court proceeds "as if it is deciding a motion to compel arbitration," but if the relevant arbitration provision "is valid and the parties' dispute falls within its scope" the Court will convert Xpress's motion to compel arbitration into a Rule 12(b)(3) motion to dismiss for improper venue. *Bahoor*, 152 F. Supp. 3d at 1096–97; *Nandorf, Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 410 F. Supp. 3d 882, 891 (N.D. Ill. 2019) (converting motion to compel arbitration into a motion to dismiss under Rule 12(b)(3), granting that motion, and dismissing case).[5]

---

[4] It is undisputed that Blocker applied to be a "transportation worker" as the term is used in part (b) of paragraph 13 of the Resolution Program. That provision states that the TUAA applies when the Participant is a transportation worker.

[5] Because Blocker is *pro se*, his filings are held to a lower standard than lawyer-drafted pleadings. However, *pro se* litigants are still "masters of their own complaints," and district judges "have no obligation to act as counsel or paralegal to *pro se* litigants." *Johnson v. Orkin,*

5

### III. Analysis

#### A. Valid Agreement to Arbitrate

"Before compelling an unwilling party to arbitrate, [a] court must engage in a limited review to determine whether the dispute is arbitrable." *Bratt Enterprises, Inc. v. Noble Intern. Ltd,* 338 F.3d 609, 612 (6th Cir. 2003). This involves a two-step inquiry: 1) does a valid agreement to arbitrate exist between the parties, and 2) does the specific dispute fall within the substantive scope of that agreement. *Id.*

Thus the Court first determines whether a valid agreement to arbitrate exists between Blocker and Xpress. In determining the existence of an agreement to arbitrate, federal courts apply state-law principles of contract formation. *See Sgouos v. TransUnion Corp.*, 817 F.3d 1029, 1034 (7th Cir. 2016); *Taylor v. Butler,* 142 S.W.3d 277, 284 (Tenn. 2004). Under Tennessee Law, a contract is enforceable if it represents "mutual assent to its terms," is "supported by sufficient consideration" and sufficiently definite, and is free from fraud and undue influence and not contrary to public policy. *T.R. Mills Contractors, Inc. v. WRH Enterprises, LLC*, 93 S.W.3d 861, 865 (Tenn. Ct. App. 2002). Further, "[i]n the typical case, assent to a contract is shown by the signature of the parties." *Flanary v. Carl Gregory Dodge of Johnson City, LLC*, 2005 WL 1277850, at *8 (Tenn. Ct. App. May 31, 2005).[6] The record in this case shows that the arbitration agreement in this case is an enforceable contract.

---

*LLC*, 928 F. Supp. 2d 989, 998 (N.D. Ill. 2013) (citation omitted), aff'd, 556 F. App'x 543 (7th Cir. 2014).

[6] Even so, "[a] written contract does *not* have to be signed to be binding on the parties." *T.R. Mills Contractors, Inc.*, 93 S.W.3d at 865 (emphasis added).

6

Here, in exchange for applying for the job with Xpress, Blocker was required to agree to Xpress's mandatory arbitration provision. The Resolution Program, which he signed, expressly states that it applies to "applicants and employees." Blocker maintains that he never received or signed an arbitration agreement. Dkts. 29, 30. Blocker concedes, however, that he submitted an online application for the position with Xpress on or about July 19, 2019, and concedes that he did not attach that application to his filings in this case. Dkt. 29, pp. 2, 7.

The documents attached to Xpress's sworn declarations show that Blocker signed two separate documents demonstrating his agreement to arbitrate. The Resolution Program, titled in bold, large font "Xpress Resolution Program and Rules for Arbitration" is a six-page document listing the specific terms and conditions of the arbitration agreement between Blocker and Xpress. (Dkt. 22-1). On the last page of this document, Blocker signed the agreement with his digital signature, next to his printed name and the date, and significantly, his social security number is included—personal information only known to him.

The second document, the Arbitration Agreement, is also clearly titled in large, bold font "Arbitration Program Agreement." (Dkt. 22-1). This form contains two paragraphs, acknowledging that Blocker has been provided with a copy of the Resolution Program, has reviewed it, and consents to be bound by the terms outlined in the Program. Again, Blocker's digital signature is on this agreement along with his printed name, the date and his social security number.

In response to Xpress's declaration attaching the arbitration agreements that Blocker signed, Blocker attests that he did not receive or sign those documents. (Dkt. 30). But he does not address the fact that his digital signature and other identifying information are on the online application, which he admits to completing and submitting to Xpress. Further, Xpress's documentation attached to its second sworn declaration (McGraw Second Decl. (Dkt. 32)) shows that Blocker's digital signature on other documents submitted to Xpress matches his signature on the arbitration agreement.

Therefore the Court finds the parties entered a valid agreement to arbitrate.

### B. Blocker's Claims Fall within the Scope of the Agreement

The Court next determines whether the parties' dispute falls within the agreement's substantive scope. "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v Mercury Constr. Corp.,* 103 S.Ct. 927, 941 (1983); *see also Merrimack Mut. Fire Ins. Co. v. Batts*, 59 S.W.3d 142, 149 (Tenn. Ct. App. 2001) ("Tennessee's courts construe arbitration agreements broadly in favor of arbitration and routinely uphold and enforce arbitration agreements."). Blocker in this lawsuit claims violations of the FCRA and the FLSA as well as fraudulent inducement.

Xpress's Resolution Program defines a legal dispute as:

> Any dispute between a Participant and the company that involves any legal or equitable claim, regardless of when the events on which it is based occurred, including events before or after a Participant's employment and events before a Participant became subject to this Program (unless such Legal Dispute was already asserted in a court or before an administrative adjudicative body).

8

(Dkt. 22-1, par. 2). The clause also lists certain exceptions to the definition including for example a claim for workers compensation benefits, unemployment compensation benefits, or claims expressly excluded from mandatory arbitration by federal or Tennessee law. (*Id.*) Blocker's claims do not fall within any of these exceptions.

All three of Blocker's claims fall within the broad definition of "*any legal or equitable claim*" and therefore within the scope of the arbitration agreement.

### C. Rule 12(b)(3) Motion

Xpress styled its motion as a Rule 12(b)(3) motion, which allows a party to raise improper venue. Fed. R. Civ. Pro. 12(b)(3). However the relief Xpress requests is to compel arbitration and stay this case. Interpreting Section 4 of the F.A.A., the Seventh Circuit has held that where an arbitration agreement "contains a forum selection clause, only the district court *in that forum* can issue a §4 order compelling arbitration." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*, 49 F.3d 323, 327 (7th Cir. 1995) (emphasis added); *see also Haber v. Biomet, Inc.,* 578 F.3d 553, 558 (7th Cir. 2009) ("Otherwise, the clause of § 4 mandating that the arbitration and the order to compel issue from the same district would be meaningless.") (quoting *Merrill Lynch*, 49 F.3d at 327). Accordingly, a Rule 12(b)(3) motion to dismiss for improper venue is the proper procedure when the arbitration clause requires arbitration outside of the district court's district. *Faulkenberg v. CB Tax Franchise Systems, LP,* 637 F.3d 801, 808 (7th Cir. 2011); *see also Bahoor*, 152 F. Supp. 3d at 1094, 1102. Here, the Resolution Program's "Choice of Law and Venue" provision specifically

9

states that the parties "agree that any Arbitration *shall be conducted in Hamilton County, Tennessee* (unless otherwise agreed)." (Dkt. 22-1, par. 13). Therefore, converting the motion to a motion to dismiss for improper venue, the Court grants the motion.[7]

## VI. Conclusion

For the stated reasons, Defendant U.S. Xpress Enterprises Inc.'s Motion [22], converted to a motion to dismiss for improper venue, is granted. This case is dismissed without prejudice. Defendant's Rule 12(b)(6) motion to dismiss and Plaintiff's motion for summary judgment are denied without prejudice as moot. Civil case terminated.

E N T E R:

Dated: March 4, 2021

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge

---

[7] In light of the ruling in this order, the Court will not address Xpress's Rule 12(b)(6) motion to dismiss or Blocker's motion for summary judgment.

10